FILED & JUDGMENT ENTERED
Christine F. Winchester

June 17 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **JOSEPH DAVID RICE**, ) | Chapter 13 |
| ) | Case No.: 25-30341 |
| Debtor. ) | |
| ) | |

## ORDER DISMISSING CASE AND BARRING REFILING FOR 180 DAYS

**THIS MATTER** is before the court on its April 14, 2025 Order to Appear and Show Cause ("Order"). This is the Debtor's third Chapter 13 case in the last six years, and the Debtor has spent all but one month of the six years as a debtor in unsuccessful bankruptcy cases. The Debtor commenced case no. 19-50624 in the Middle District of North Carolina on June 18, 2019, and the Middle District dismissed the case on March 23, 2022 due to a plan payment default. The Debtor then commenced case no. 22-30185 (the "Previous Case") in this court about one month later on April 25, 2022. The Chapter 13 Trustee filed a Motion of Trustee to Dismiss Case or to Modify Plan

on February 25, 2025 that alleges another plan payment default.  The March 26, 2025 order says the Debtor consents to dismissal if he does not convert the case to Chapter 7 in the following 30 days, but the Previous Case was still pending when the Debtor commenced this case (the "Current Case") by filing a voluntary petition on April 8, 2025.

The court entered the Order a few days later.  The Order describes the Debtor's history of serial filings and notes that a debtor's attempt to maintain two bankruptcy cases at the same time violates the "single estate rule," see Assocs. Fin. Servs. Corp. v. Cowen (In re Cowen), 29 B.R. 888, 894 (Bankr. S.D. Ohio 1983) ("The filing of two simultaneous petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtors' financial affairs by administration of a debtor's property as a single estate under a single Chapter within the Code." (citing 11 U.S.C. §§ 103, 301, 302, 303)), and can constitute an abuse of the bankruptcy process.  The court dismissed the Previous Case on April 28, 2025.

The Debtor filed a response ("Response") to the Order on May 2, 2025.  The Response admits the Debtor is a repeat filer who has been in bankruptcy for most of the last six years but argues he did not file any cases in bad faith or attempt to "game the system."  The Debtor says he stayed in each of his prior cases for around three years until a loss of employment made his Chapter 13 plans unfeasible.  In the Previous Case, the Debtor was out of work for several months before getting a new job in November 2024, and he could not afford to catch up his missed payments following his reemployment.  He wanted to pursue a new plan with more affordable payments, but he could not voluntarily dismiss the Previous Case and immediately

2

commence a new one because two secured creditors had obtained relief from the automatic stay, and the Bankruptcy Code bars debtors for 180 days if they voluntarily dismiss a case after a creditor seeks relief from the stay. See 11 U.S.C. § 109(g)(2) ("Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if— . . . (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."). The Debtor says he consented to dismissal on March 26 but was instead given 30 days to convert the case prior to dismissal "pursuant to Trustee and/or Court practice."[1] The Response argues that the single estate rule does not always require dismissal of the second case and the Debtor did not file the Current Case in bad faith.

The court held a hearing on the Order on May 6, 2025, and attorneys representing the Chapter 13 Trustee, the Debtor, and Unifour Financial Services, LLC ("Unifour") appeared. At the hearing, the Debtor's attorney made arguments consistent with the Response. The Trustee's attorney said the simultaneous cases would cause some complexity in determining what was property of the estate, the complexity could be dealt with at confirmation, the Debtor's explanation for his

---

[1] The court regularly allows Chapter 13 debtors on the verge of dismissal the opportunity to convert to Chapter 7 if they indicate they may seek conversion, but the court does not require such provisions in all cases. At the May 6 hearing on the Order, the Chapter 13 Trustee's attorney said the Trustee does not include conversion provisions in all proposed dismissal orders. The Debtor's attorney said the Debtor did not request the opportunity to convert in the Previous Case, and the Trustee's attorney could not explain why the March 26 order includes the provision. Regardless, a debtor's advocacy in favor of a trustee's motion to dismiss a case can be sufficient to trigger section 109(g)(2). See In re La Granja 240, L.P., 636 B.R. 801, 802, 807–11 (Bankr. C.D. Cal. 2022) (concluding the 180-day bar applied when the debtor asked the court to expedite a hearing on and grant a trustee's motion to dismiss).

3

behavior was reasonable, and he thought the Debtor had done enough to show he filed the Current Case in good faith. Unifour's attorney said the creditor was still trying to get paid on a car loan made nine years earlier, a November 2024 order in the Previous Case allowed the Debtor to resume plan payments but he did not, the Response admitted that the Debtor was trying to get around provisions of the Bankruptcy Code that prevent refiling, and he thought the Debtor was also trying to use the violation of the single estate rule to avoid the provisions of 11 U.S.C. § 362(c).[2] According to Unifour's attorney, the Debtor abused the Bankruptcy Code and the court needs to enforce the single estate rule or all debtor's attorneys (including him) would consider violating it to gain an advantage in every case.

Bankruptcy courts can dismiss Chapter 13 cases or convert them to Chapter 7 for "cause." 11 U.S.C. § 1307(c). The Bankruptcy Code does not define cause, but section 1307(c) includes a non-exhaustive list of examples of it. Sugar v. Burnett, 130 F.4th 358, 373 (4th Cir. 2025). While a lack of good faith is not on the section 1307(c) list, "the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case." Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007); see Kestell v. Kestell (In re Kestell),

---

[2] The Debtor filed a Motion to Extend Automatic Stay ("Motion") on April 9, 2025 and withdrew it on April 29. The Motion incorrectly says the court dismissed the Previous Case on March 26, 2025, notes that the automatic stay in the Current Case will expire 30 days after the Debtor's petition date pursuant to section 362(c)(3)(A), and asserts there has been a substantial change in circumstances and/or other good cause to extend the stay. At the May 6 hearing, the Debtor's attorney said she withdrew the Motion after deciding that the stay would not terminate in the Current Case because the court had not dismissed the Previous Case when the Current Case commenced. While this issue was not before the court at the hearing and the court will not examine it in depth, the court disagrees with the Debtor's attorney's interpretation of section 362(c)(3)(A).

4

99 F.3d 146, 148 (4th Cir. 1996) (noting that cause for dismissal in Chapter 13 cases includes bad faith (citing In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992))).

Like cause, the Bankruptcy Code does not define "good faith." Deans v. O'Donnell, 692 F.2d 968, 969 (4th Cir. 1982). Courts review the totality of the circumstances to examine good faith. Id. at 972; In re Covino, 245 B.R. 162, 167 (Bankr. D. Idaho 2000) (citing In re Leavitt, 171 F.3d 1219, 1224 (9th Cir. 1999); Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994)). There are various tests for good faith in Chapter 13.[3] See, e.g., In re Condon, 358 B.R. 317, 325 (B.A.P. 6th Cir. 2007) (listing seven factors (citing Alt v. United States (In re Alt), 305 F.3d 413, 419 (6th Cir. 2002))); In re Haning, 252 B.R. 799, 808 (Bankr. M.D. Fla. 2000) (eleven factors (citing Kitchens v. Ga. R.R. Bank & Tr. Co. (In re Kitchens), 702 F.2d 885, 888–89 (11th Cir. 1983))); In re Simmons, 149 B.R. 586, 589 (Bankr. W.D. Mo. 1993) (three factors (quoting In re LeMaire, 898 F.2d 1346, 1349 (8th Cir. 1990) (en banc))); id. at 591 (nine factors (citing In re Little Creek Dev. Co., 779 F. 2d 1068, 1073 (5th Cir. 1986))); 8 COLLIER ON BANKRUPTCY ¶ 1307.04[10] (16th ed. 2024) (four factors (citing Leavitt, 171 F.3d at 1224)). Despite the variety of tests and factors, it is impossible to identify all of the considerations that might be relevant to determining a debtor's good faith in a particular case. Condon, 358 B.R. at 326 (quoting Metro Emps. Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah), 836 F.2d

---

[3] The criteria for the dismissal of a Chapter 13 case, on the one hand, or denial of plan confirmation pursuant to 11 U.S.C. § 1325, on the other, due to a lack of good faith are similar. See In re Condon, 358 B.R. 317, 325 (B.A.P. 6th Cir. 2007) ("[T]he factors overlap to some extent and *both tests are designed to detect abuses of the provisions and spirit of chapter 13*."). Dismissal, however, requires behavior that is even more "atypical" and "extraordinary" than denial of confirmation. Marrama, 549 U.S. at 375 n.11 (citing 11 U.S.C. § 1325(a)(3); Love, 957 F.2d at 1356).

5

1030, 1033 (6th Cir. 1988)); see Haning, 252 B.R. at 808 ("[T]he Court must consider all of the circumstances surrounding the Debtors' pre-petition activity and the filing of the Case."); In re Earl, 140 B.R. 728, 735 (Bankr. N.D. Ind. 1992) ("[T]he relevant factors to be considered vary from case to case." (citing In re Jones, 119 B.R. 996, 1002–03 (Bankr. N.D. Ind. 1990))). Regardless of the test, the most important consideration in determining a debtor's good faith is whether the debtor has respected the spirit and letter of the Bankruptcy Code. Deans, 692 F.2d at 972 ("Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan." (quoting 9 COLLIER ON BANKRUPTCY 9.20 at 319 (14th ed. 1978))); Condon, 358 B.R. at 326 ("[T]he 'key inquiry' for courts attempting to ascertain a debtor's good faith 'is whether the debtor is seeking to abuse the bankruptcy process.'" (quoting Alt, 305 F.3d at 419)).

The Debtor argues that the single estate rule does not always mandate dismissal. The court agrees with that part of the Debtor's argument: every violation of the single estate rule does not require dismissal or another sanction. See In re Montes, 526 B.R. 397, 403 (Bankr. D.N.M. 2015) (agreeing with cases holding that there is no per se prohibition of simultaneous cases); Covino, 245 B.R. at 168 ("Courts . . . have generally agreed . . . that there is no absolute prohibition against the filing of a Chapter 13 petition while another bankruptcy case remains pending." (collecting cases)). The single estate rule "has no foundation in either the language or the legislative history of the Code." In re Bullock, 206 B.R. 389, 393 (Bankr. E.D. Va. 1997). This court regularly allows cases to continue where a debtor technically

6

violates the rule, such as by filing a new case while the prior case remains open for administrative reasons after the dismissal of the debtor. Similarly, the court would be unlikely to punish a debtor with dismissal for an unintentional violation of the rule, and the case law includes situations where courts have found good faith despite a violation of the rule, see, e.g., Montes, 526 B.R. at 403–04 (noting that the debtors filed their second case in good faith more than a year after successfully completing a Chapter 7 to deal with different debts).

    Nevertheless, "[t]he absence of a statutory bar to the filing of [the Current Case] does not render that strategy equitable or appropriate." Covino, 245 B.R. at 169. The court must pay attention to "the results achieved by both filings in determining whether the [Debtor has] acted in bad faith." Id. at 168 (citing Downey Sav. & Loan Ass'n v. Metz (In re Metz), 820 F.2d 1495, 1497 (9th Cir. 1987); In re Whitmore, 225 B.R. 199, 202 (Bankr. D. Idaho 1998)). Even the two cases cited by the Debtor as concluding that there is no per se prohibition on simultaneous cases, Montes and Bullock, qualify their holdings. Montes says simultaneous cases "should be the exception rather than the rule[] and must be reviewed carefully to ensure that the second filing complies with the letter and spirit of the Bankruptcy Code." 526 B.R. at 403. Similarly, Bullock says no cases question the "inherent truth" of the single estate rule, generally agrees that a debtor should not have simultaneous bankruptcy cases, and requires the second case to have been filed in good faith and necessitated by "extreme circumstances" in order to avoid dismissal. 206 B.R. at 393.

    The Debtor here is not asking the court to absolve a technical or unintentional violation of the single estate rule, and the extreme circumstance was the Debtor's

7

desire to avoid the operation of a statutory prohibition against filing a new case.[4] The Debtor's plan in the Previous Case was no longer feasible due to his loss of employment, and the court had granted relief from the automatic stay to two of his secured creditors. The Debtor wanted to file a new case (and get a new stay) before the creditors took action to recover their collateral, but section 109(g)(2) would bar the Debtor from filing a subsequent case for 180 days if he filed a notice of voluntary dismissal. Since the Debtor could not voluntarily dismiss the Previous Case and did not want to risk waiting for the court to dismiss it, he (or, more likely, his attorney) came up with an alternative approach that could be described as clever or fraudulent depending on your point of view: the Debtor would avoid the bar of section 109(g)(2) by filing the Current Case prior to the dismissal of the Previous Case. The Debtor asks the court to rule that an intentional violation of the single estate rule in order to avoid activating a punitive Code section is indicative of good faith. It is actually a strong indication of the opposite. See In re Vanfossen, 258 B.R. 814, 819 (Bankr. N.D. Ala. 2001) ("Good faith . . . is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law." (quoting Shell Oil Co. v. Waldron (In re Waldron), 785 F.2d 936, 941 (11th Cir. 1986))). The "[D]ebtor has most egregiously manipulated the bankruptcy code, and that alone constitutes cause for dismissal." Simmons, 149 B.R. at 589; see also Covino, 245 B.R. at 169 ("Debtors cannot now, through manipulation of the Code, use the statutory protections of bankruptcy as a

---

[4] To be clear, this is not the type of extreme circumstances that were at play in Bullock. 206 B.R. at 393–94 (noting the deficient legal advice provided to the debtor, her creditors' failure to give her notice of default, her good faith, and the debtor's completion of her plan pro se in her first case).

8

Case 25-30341 Doc 24 Filed 06/17/25 Entered 06/17/25 14:10:26 Desc Main
Document Page 9 of 12

remedy to avoid the consequences of being disqualified for the precise relief they seek.").

While the Debtor's intentional violation of the single estate rule to avoid the operation of section 109(g)(2) is the most glaring example of his lack of good faith, other aspects of this case support the finding. The Debtor has been in Chapter 13 for all but one month of the last six years, and his two prior cases resulted in dismissal due to plan payment default. See Haning, 252 B.R. at 808 (listing "the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors" as a factor to consider in determining a debtor's good faith (citing Kitchens, 702 F.2d at 888–89)); In re Spear, 203 B.R. 349, 353 (Bankr. D. Mass. 1996) ("While a debtor's history of filings and dismissals is not bad faith, per se, it may be evidence of bad faith." (citing In re Jones, 174 B.R. 8, 14 (Bankr. D.N.H. 1994))); COLLIER ¶ 1307.04[10] (listing "the debtor's history of filings and dismissals" as a factor to consider in evaluating good faith (citing Leavitt, 171 F.3d at 1224)). This court regularly dismisses Chapter 13 cases and bars future filings when debtors file three or more cases in quick succession and/or spend an inordinate amount of time under bankruptcy protection in unsuccessful cases if the debtor cannot explain why the result will be different in the new case. In addition, Unifour's attorney noted that his client made a car loan to the Debtor nine years ago, and the Debtor now proposes to extend the repayments for another five years, after Unifour obtained relief from stay in the last case. Fourteen years is an unreasonable amount of time for the completion of a car loan. See 11 U.S.C. § 1307(c)(1) (providing that unreasonable delay that is prejudicial to creditors is cause for dismissal); Vanfossen, 258 B.R. at

9

823 (concluding that serial filings resulted in unreasonable delay that was prejudicial to creditors); see also Haning, 252 B.R. at 808 (listing "the probable or expected duration of the debtor's Chapter 13 plan" as a good faith factor (citing Kitchens, 702 F.2d at 888–89)). Unifour's attorney also noted that the Debtor failed to make any plan payments in his prior case between November 2024, when he says he was reemployed, and the dismissal of the case five months later. A debtor's willful failure to make plan payments is not indicative of good faith. See, e.g., Condon, 358 B.R. at 325 (listing "the debtor's treatment of creditors both before and after the petition was filed" as a factor to consider in determining good faith (citing Alt, 305 F.3d at 419)); see also Vanfossen, 258 B.R. at 823 (observing that a debtor's failure to make payments under a confirmed plan constituted a willful failure to abide by orders of the court).

The court is cognizant of the Fourth Circuit's recent instruction that bankruptcy courts should consider a debtor's reliance on the advice of counsel in determining good faith and cause for dismissal. Sugar, 130 F.4th at 376. While "the Debtor is generally bound by the errors and omissions of his attorney," Condon, 358 B.R. at 328–29 (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633–34 (1962)), advice of counsel is part of the totality of the circumstances in the good faith analysis, Sugar, 130 F.4th at 376. The court has considered the role of the Debtor's attorney's advice in this case and is confident that dismissal and a 180-day bar is appropriate. The attorney's advice likely led to the single estate rule violation, but she was attempting to avoid the statutory trap of section 109(g)(2) that would probably ensnare a pro se debtor in the same situation, and there is no indication that the Debtor would have

10

been able to avoid the statutory bar without the Current Case having been filed prior to the dismissal of the Previous Case. The attorney is not responsible for the Debtor's plan payment defaults in his prior cases or his failure to make plan payments when able in the Previous Case. Finally, and perhaps most importantly, the penalty imposed here, while significant, is not as punitive as in Sugar, 130 F.4th at 375 (questioning the bankruptcy court's dismissal of the debtor and imposition of a five-year bar), and the court is imposing the same penalty that would have been automatically activated by section 109(g)(2) if not for the Debtor's dual estate maneuvering, see In re Moody, 336 B.R. 876, 880 (Bankr. S.D. Ga. 2005) (observing the tolling of the 180-day bar during a case filed in violation of section 109(g)(2) (citing In re Wilson, 85 B.R. 72, 73 (Bankr. N.D. Ill. 1988))); Spear, 203 B. R. at 353 (noting that the Fourth Circuit affirmed a district court order allowing dismissals with prejudice pursuant to 11 U.S.C. § 349(a) (citing Jolly v. Great W. Bank, 45 F.3d 426, 1994 WL 717626, at *1 (1994) (unpublished table decision))); see also Covino, 245 B.R. at 168 ("In some extreme circumstances, where bad faith is found, more than 'mere' dismissal is appropriate.").

The court does not question the Debtor's assertion that he sincerely wants to complete a Chapter 13 plan, but "[g]ood faith is not synonymous with honesty and bad faith is not synonymous with dishonesty. . . . [I]f the good faith requirement . . . means anything, it means that the proposed plan cannot be a device to avoid the limitations imposed by the Bankruptcy Code itself." Earl, 140 B.R. at 739 (quoting In re Jackson, 91 B.R. 473, 475 (Bankr. N.D. Ill. 1988)); see also Covino, 245 B.R. at 169 ("Utilization of Chapter 13 to successfully circumvent the penalty imposed upon

11

Debtors for their inappropriate conduct in a prior bankruptcy case is not just irony. It would instead portray the law as nonsense."). After twice trying and failing to complete a plan and faced with a statutory provision that prevented a third try, the Debtor attempted to "avoid the limitations imposed by the Bankruptcy Code itself" by intentionally violating the single estate rule. Based on the Debtor's actions in his prior cases and in the commencement of this one, the court concludes that the Debtor did not file this case in good faith and that it constitutes an abuse of the bankruptcy process. Accordingly, pursuant to 11 U.S.C. §§ 105(a) and 1307(c), this case is hereby **DISMISSED**, and the Debtor is **BARRED FROM FILING BANKRUPTCY CASES FOR THE 180 DAYS FOLLOWING THE ENTRY OF THIS ORDER**.

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court

12